1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10  JOE HAND PROMOTIONS, INC.,

11          Plaintiff,                    No. CIV S-09-2501 FCD DAD

12      v.

13  JOSEPH RAYMOND OLIVERA,               FINDINGS & RECOMMENDATIONS
    Individually and d/b/a STOOGES OF
14  STOCKTON, and d/b/a THE STOOGES;
    and STOOGES, LLC, an unknown business
15  entity d/b/a STOOGES OF STOCKTON,
    and d/b/a THE STOOGES.
16
            Defendants.
17  _____/

18          This matter came before the court on January 15, 2010, for hearing of plaintiff's

19  motion for default judgment against defendant Joseph Raymond Olivera, individually and doing

20  business as Stooges of Stockton, and Stooges, LLC.  (Doc. No. 9).  Thomas P. Riley appeared

21  telephonically on behalf of plaintiff.  No appearance was made by or on behalf of defendants at

22  the hearing.

23          Plaintiff's counsel indicated at the hearing that he had no contact with defendants

24  since the filing of the action.  The court's docket reflects that defendants have not filed any

25  motion for relief from the Clerk's Entry of Default on November 20, 2009, nor any opposition to

26  plaintiff's motion for entry of default judgment despite being served with both.  Upon hearing

1

1  argument, the court took plaintiff's motion under submission.

2       For the reasons set forth below, the undersigned recommends that plaintiff's

3  motion be granted and that default judgment be entered against defendants.

4  BACKGROUND

5       Plaintiff Joe Hand Promotions, Inc. is an international distributor of sports and

6  entertainment programming.  Defendant Olivera operates at least two commercial establishment

7  called "Stooges of Stockton d/b/a The Stooges," one located at 8118 Est Lane, Suite 125 in

8  Stockton, California and the other at 105 W. Pine Street in Lodi, California.  By contract,

9  plaintiff was granted the proprietary rights to distribute via closed-circuit television the "Ultimate

10  Fighting Championship 76: 'Knockout'" event (the "Program") which was telecast nationwide

11  on Saturday, September 22, 2007.  Defendants intercepted and exhibited the program in the

12  commercial establishments referred to above without authorization to do so.

13       The record reflects that service of process was effected on defendants Olivera and

14  Stooges, LLC on October 15, 2009, by personal service.  (Doc. Nos. 5 and 6.)  After defendants

15  failed to file an answer, plaintiff filed a request for entry of default on November 17, 2009.  (Doc.

16  No. 7.)  The Clerk entered default against the defendants on November 20, 2009.  (Doc. No. 8.)

17  On December 11, 2009, plaintiff filed its motion for default judgment with a proof of service

18  reflecting service of the motion on defendants.

19  LEGAL STANDARDS

20       Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for

21  entry of default judgment.  Upon entry of default, the complaint's factual allegations regarding

22  liability are taken as true, while allegations regarding the amount of damages must be proven.

23  Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983)

24  (citing Pope v. United States, 323 U.S. 1 (1944); Geddes v. United Fin. Group, 559 F.2d 557 (9th

25  Cir. 1977)); see also DirectTV v. Huynh, 503 F.3d 847, 851 (9th Cir. 2007); TeleVideo Sys., Inc.

26  v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

1    Where damages are liquidated, i.e., capable of ascertainment from definite figures

2  contained in documentary evidence or in detailed affidavits, judgment by default may be entered

3  without a damages hearing.  Dundee, 722 F.2d at 1323.  Unliquidated and punitive damages,

4  however, require "proving up" at an evidentiary hearing or through other means.  Dundee, 722

5  F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993).

6    Granting or denying default judgment is within the court's sound discretion.

7  Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986); Aldabe v. Aldabe, 616 F.2d. 1089,

8  1092 (9th Cir. 1980).  The court is free to consider a variety of factors in exercising its discretion.

9  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Among the factors that may be

10  considered by the court are

11    (1) the possibility of prejudice to the plaintiff, (2) the merits of
    plaintiff's substantive claim, (3) the sufficiency of the complaint,
12    (4) the sum of money at stake in the action; (5) the possibility of a
    dispute concerning material facts; (6) whether the default was due
13    to excusable neglect, and (7) the strong policy underlying the
    Federal Rules of Civil Procedure favoring decisions on the merits.

14

15  Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

16                                              ANALYSIS

17  I.  Whether Default Judgment Should Be Entered

18    The factual allegations of plaintiff's complaint, taken as true pursuant to the entry

19  of default against defendants Olivera (individually and d/b/a/ Stooges of Stockton) and Stooges,

20  LLC, establish the following circumstances:  (1) defendant Olivera is the owner, operator,

21  licensee, permitee, person in charge, or person with control over the commercial establishments

22  doing business as Stooges of Stockton in Stockton and Lodi, California; (2) by contract, plaintiff

23  was granted the exclusive nationwide commercial distribution rights to distribute via closed-

24  circuit television the "Ultimate Fighting Championship 76: 'Knockout'" event which was

25  telecast nationwide on Saturday, September 22, 2007; (3) pursuant to the contract, plaintiff

26  entered into sublicensing agreements with various commercial entities throughout North America

1   by which it granted those entities limited sublicensing rights to exhibit the Program to their

2   patrons within their establishments; (4) as a commercial distributor of sporting events, plaintiff

3   expended substantial monies marketing, advertising, promoting, administering, and transmitting

4   the program to its customers; (5) with full knowledge that the program was not to be intercepted,

5   received, and exhibited by unauthorized entities, defendants exhibited the program at the time of

6   its transmission and did so willfully and for purposes of commercial or private gain at both

7   locations; (6) defendant violated 47 U.S.C. § 553, et seq., which prohibits the unauthorized

8   interception, exhibition, publication, and divulgence of programs;[1] (7) by reason of defendant's

9   violation of § 553, plaintiff has a private right of action; (8) defendant also tortiously obtained

10  possession of plaintiff's program and wrongfully converted it to defendants' own use and benefit;

11  (9) by reason of defendants' tortious conversion, plaintiff is entitled to compensatory and

12  punitive damages; (10) the interception and exhibition of the Program violated California

13  Business & Professions Code § 17200, et seq.; and (11) by reason of defendants' violation of the

14  Business & Professions Code § 17200, et seq., plaintiff is entitled to such remedies as restitution,

15  disgorgement, and attorney's fees.  (Doc. No. 1 at 3-8.)

16  /////

17  _____

18      [1]  Although not entirely clear, it appears that the Program in question was a cable
    television broadcast and not a satellite television broadcast.  Therefore, only 47 U.S.C. § 553
19  (Count Two) would be implicated and not 42 U.S.C. § 605 (Count One).  See J & J Sports
    Productions, Inc. v. Manzano, NO. C 08-01872 RMW, 2008 WL 4542962, at *2 (N.D. Cal. Sept.
20  29, 2008) ("A signal pirate violates section 553 if he intercepts a cable signal, he violates section
    605 if he intercepts a satellite broadcast.  But he cannot violate both by a single act of
21  interception.")  Accordingly, the court will not include the §605 cause of action in recommending
    entry of default judgment.  In this regard, many courts have held that a defendant cannot be held
22  liable under both 47 U.S.C. §§ 553 and 605(a).  J & J Sports Productions, Inc. v. Ro, No. C 09-
    02860 WHA, 2010 WL 668065, at *3 (N.D. Cal. Feb. 19, 2010); J & J Sports Productions, Inc.
23  v. Prado, No. 2:07-cv-02104 GEB DAD, 2008 WL 822159, at *3 (E.D. Cal. Mar. 27, 2008);
    Kingvision Pay Per View, Ltd., v. Williams, 1 F. Supp. 2d 1481, 1484 (S.D. Ga. 1998).  In any
24  event, the overwhelming majority of courts have concluded that where, as here, the defendants
    have defaulted damages are to be awarded only under one or the other provision.  Kingvision Pay
25  Per View, Ltd., v. Backman, 102 F. Supp. 2d 1196, 1197, n. 1 (N.D. Cal. 2000) (and cases cited
    therein); see also J & J Sports Productions, Inc. v. Betancourt, No. 08cv937 JLS (POR), 2009
26  WL 3416431, at *2 (S.D. Cal. Oct. 20, 2009).

1    Plaintiff seeks statutory damages for the willful violation of 47 U.S.C. § 553 as

2  alleged in Count Two and for recovery of all costs and reasonable attorney's fees.  (Id. at 6.)

3  Plaintiff also seeks compensatory and punitive damages, reasonable attorney fees, and costs of

4  suit for defendant's tortious conversion of the Program as alleged in Count Three.  (Id. at 7.)

5  Finally, plaintiff seeks restitution, declaratory relief, injunctive relief, attorney fees, and costs of

6  suit for defendant's violation of the California Business & Professions Code as alleged in Count

7  Four .  (Id. at 8.)

8    Plaintiff's complaint and summons were served upon defendants Olivera and

9  Stooges, LLC on October 15, 2009, by personal service.  (Doc. Nos. 5 and 6.)  The undersigned

10  finds that the defendants were properly served with the complaint and that the Clerk properly

11  entered the default of the defendant on November 20, 2009.  (Doc. No. 8.)  Defendants Olivera

12  and Stooges, LLC were also served with plaintiff's request for entry of default and application

13  for default judgment by the court.  (Doc. Nos. 7 and 9.)  Despite being served with process and

14  all papers filed in connection with plaintiff's request for entry of default and motion for default

15  judgment, defendants have failed to respond to plaintiff's complaint, request for entry of default,

16  or motion for default judgment.  Nor did the defendants appear at the hearing on plaintiff's

17  motion.

18    After weighing the Eitel factors, the undersigned finds that the material

19  allegations of the complaint for the most part support plaintiff's claims.  Plaintiff will be

20  prejudiced if default judgment is denied because plaintiff has no other recourse for recovery of

21  the damages suffered due to the defendants' failure to pay for the right to exhibit the Program.

22    In light of the entry of default against the defendants, there is no apparent

23  possibility of a dispute concerning the material facts underlying the action.  Nor is there any

24  indication that the defendants' default resulted from excusable neglect, as defendants were

25  properly served with plaintiff's pleading as well as with plaintiff's request for entry of default

26  /////

5

1   and motion for default judgment.  Defendants have had ample notice of plaintiff's intent to

2   pursue a default judgment against them.

3          Although public policy generally favors the resolution of a case on its merits, the

4   defendants' failure to make a proper appearance and defend against plaintiff's claims has made a

5   decision on the merits impossible in this case.  Because most of the Eitel factors weigh in

6   plaintiff's favor, the undersigned, while recognizing the public policy favoring decisions on the

7   merits, will recommend that default judgment be entered against the defaulted defendants.

8   II.  Terms of Judgment to Be Entered

9          After determining that entry of default judgment is warranted, the court must next

10  determine the terms of the judgment.  Upon consideration of all of plaintiff's briefing, the

11  undersigned will recommend that damages be awarded but not in the amount requested.

12         By its motion for default judgment, plaintiff seeks a judgment in the total amount

13  of $110,875.  That sum consists of $110,000 for the violation of Title 47 and $875 for the tort of

14  conversion.  (Doc. No. 9.)  The undersigned is mindful that the defendants were served with

15  plaintiff's motion for default judgment and were thereby placed on notice of the amount sought

16  by plaintiff.  However, granting or denying default judgment is within the court's sound

17  discretion, and one of the factors the court is free to consider in exercising its discretion is the

18  sum of money at stake.  See J & J Sports Productions, Inc. v. Betancourt, No. 08cv937 JLS

19  (POR), 2009 WL 3416431, at *3 (S.D. Cal. Oct. 20, 2009).

20         The Cable and Television Consumer Protection Act provides that a plaintiff may

21  elect to seek either actual or statutory damages.  47 U.S.C. § 553(c)(3)(A)(i) and (ii).  Here,

22  plaintiff appears to seek enhanced statutory damages.  Statutory damages for each violation of the

23  Act may be awarded at a minimum of $250 and a maximum of 10,000, as the court considers

24  just.  47 U.S.C. § 553(c)(3)(A)(ii).  A maximum enhanced damages award of up to $50,000 is

25  available only where the court finds the violation to have been committed willfully and for the

26  purposes of commercial advantage or private financial gain.  47 U.S.C. § 553(c)(3)(B).  Plaintiff

1   argues that the amount requested in damages is justified here primarily because of the need to

2   deter broadcast piracy in light of the harm done to plaintiff's business as a result of such

3   activities.[2]  The court finds plaintiff's damages argument not completely persuasive in light of the

4   record before the court.

5               In this case, plaintiff's investigator has declared that during the Program broadcast

6   in question, he estimated the number of patrons inside the Lodi establishment at forty.  The

7   investigator reported that there was no cover charge for entry to the Lodi location on the night in

8   question.  There is no evidence before the court of any promotion by defendants that the Program

9   would be shown at the Lodi establishment.  There is also no evidence before the court that a

10  special premium on food and drink was being charged at the establishment on the night of the

11  event.  The investigator stated that the establishment had one fifteen inch television, one nineteen

12  inch television and one thirty-six inch television displaying the event at the Lodi location.

13  Plaintiff has presented no evidence to the court suggesting that the defendants are repeat

14  broadcast piracy offenders based upon previous or subsequent pirating.  Finally, there is also no

15  evidence before the court suggesting that defendant Olivera is no longer operating Stooges of

16  Stockton.

17              At the Stockton location of Stooges that same night, plaintiff's investigator

18  reported observing only ten patrons in the establishment while the program was being shown.

19  The investigator reported that there was no cover charge for entry to the Stockton location.  There

20  is no evidence before the court of any promotion by defendants that the Program would be shown

21  at the establishment.  There is also no evidence before the court that a special premium on food

22  and drink was being charged at the establishment on the night of the event.  The investigator

23  stated that the establishment had only a single twenty-seven inch television displaying the event

24  _____

25      [2]  Unfortunately, plaintiff's argument regarding the amount of statutory damages that
should be awarded in this case is focused on the cause of action under 47 U.S.C. § 605.  The
request for statutory damages in excess of the maximum amount allowed under § 553 appears to
26  be based on this same error.

1   at the Stockton location.  As noted above, plaintiff has presented no evidence to the court

2   suggesting that the defendants are repeat broadcast piracy offenders based upon previous or

3   subsequent pirating.  Finally, there is also no evidence before the court suggesting that defendant

4   Olivera is no longer operating Stooges of Stockton.

5           In light of this record, and  taking into consideration that defendants were

6   displaying the pirated broadcast at two locations on the night in question to a total of

7   approximately fifty patrons, the court will recommend that judgment be entered against the

8   defaulted defendants and that plaintiff be awarded $7,500 in non-enhanced statutory damages

9   pursuant to 47 U.S.C. § 553(c)(3)(A)(ii).  See J & J Sports Productions, Inc. v. Cardoze, NO. C

10  09-05683 WHA, 2010 WL 2757106, at *3-5 (N.D. Cal. July 9, 2010) (awarding statutory

11  damages of $1,000 and $250 in enhanced damages for a § 553 violation involving a repeat

12  offender in a default judgment); J & J Sports Productions, Inc. v. Hernandez, No. 2:09cv3389

13  GEB KJN, 2010 WL 1980186, at *4 (E.D. Cal. May 17, 2010) (awarding the maximum $10,000

14  in non-enhanced statutory damages under both § 553 and § 605); J & J Sports Productions, Inc.

15  v. Manzano, NO. C 08-01872 RMW, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008) (in a

16  default judgment awarding the minimum statutory damages of $250 due to evidence that the

17  defendant no longer operated the establishment and therefore a larger award would have little

18  deterrent effect)

19          In his declaration in support of the motion for default judgment, counsel indicates

20  that plaintiff also seeks the award of $875 in damages for the state law tort of conversion,

21  representing the amount defendants would have paid plaintiff to show the Program lawfully

22  according to the rate card for the event.  Plaintiff is entitled to such an award.  See J & J Sports

23  Productions, Inc. v. Ro, No. C 09-02860 WHA, 2010 WL 668065, at *4 (N.D. Cal. Feb. 19,

24  2010); J & J Sports Productions, Inc. v. Montecinos, No. C 09-02604 JSW, 2010 WL 144817, at

25  *7 (N.D. Cal. Jan. 11, 2010); but see J & J Sports Productions, Inc. v. Ferreyra, No. C 08-128

26  LKK KJM, 2008 WL 4104315, at *1 (E.D. Cal. Aug. 28, 2008) ("Inasmuch as plaintiff seeks

1   statutory damages rather than actual damages, plaintiff's request for damages for conversion

2   should be denied.").  Therefore, the court will also will recommend that plaintiff be awarded

3   $875 in damages with respect to the tort of conversion.

4              Finally, although the prayer for relief in the complaint as well as the motion for

5   default judgment indicates that plaintiff seeks the award of costs and attorney fees, the motion for

6   default judgment does not contain any argument in support of such a request.  Moreover, no

7   evidence of costs or attorney fees incurred was submitted to the court in connection with the

8   pending motion.  Accordingly, the court will not recommend the award of costs and attorneys

9   fees.

10                                  CONCLUSION

11         For the reasons set forth above, IT IS RECOMMENDED that:

12         1.  Plaintiff's December 11, 2009 motion for default judgment (Doc. No. 9)

13   against defendants Olivera individually and doing business as Stooges of Stockton and Stooges,

14   LLC be granted;

15         2.  Judgment be entered against the defendants in the sum of $8,375 consisting of

16   $7,500 in statutory damages for violating 47 U.S.C. § 553 and $875 in damages for the tort of

17   conversion; and

18         3.  This case be closed.

19         These findings and recommendations will be submitted to the United States

20   District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within

21   twenty-one (21) days after these findings and recommendations are filed, any party may file

22   written objections with the court.  A document containing objections should be titled "Objections

23   to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to

24   /////

25   /////

26   /////

1   file objections within the specified time may, under certain circumstances, waive the right to

2   appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3   DATED: July 21, 2010.

4

5   _____

6   DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

7

8   DAD:
    Ddad1\orders.civil\joehand2501.oah.11510.mdj

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26